# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **W.D.**

**No. 20-0100** (Wood County 17-JA-190)

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father N.D., by counsel Heather L. Starcher, appeals the Circuit Court of Wood County's January 7, 2020, order terminating his parental rights to W.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Robin Bonovich, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motions for a second parental fitness evaluation and post-dispositional improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2017, the DHHR filed an abuse and neglect petition alleging that when the parents vacated their residence in Washington County, Ohio, the same month, they left behind a notebook that contained detailed and graphic conversations between them discussing plans to sexually abuse then-one-year-old W.D. Upon investigation, the matter was referred to the DHHR due to the parents' residence in Wood County, West Virginia.[2] The DHHR concluded that the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]In the proceedings below, the parents filed a joint motion to dismiss based upon lack of jurisdiction in October of 2017. The circuit court ultimately denied that motion after finding that

(continued . . . )

1

parents were not capable of providing appropriate protection and supervision in light of their explicit written discussions regarding sexual acts with their child and "being okay with the other taking part in the sexual acts with their child." Stemming from the discovery of the notebook, petitioner was arrested in Washington County, Ohio, upon charges of child endangerment and "pandering obscenity involving a minor."[3]

In April of 2018, the circuit court held an adjudicatory hearing during which the parents stipulated to the allegations contained in the petition. Specifically, petitioner admitted that he would benefit "from individualized counseling and other services so that he may be able to appropriately tend to the needs of the child." In May of 2018, the circuit court granted the parents post-adjudicatory improvement periods, the terms of which included participating in parenting and adult life skills classes as well as attending supervised visitations with the child. The parents were further required to attend individualized therapy sessions to address the sexual abuse allegations and to sign releases to allow the DHHR to access the parents' monthly reports from their therapy provider. Finally, the parents agreed to submit to a "psychological evaluation with a [multidisciplinary team] approved provider to determine any mental health diagnosis, to gain recommendations as to services that would benefit [them] and to gain knowledge on [their] ability to [parent] the child."

A DHHR provider submitted a summary in June of 2018 regarding petitioner's progress in individualized parenting sessions which stated that petitioner "appear[ed] angry at times when sensitive topics that he does not want to discuss arise. [The parents] do not appear to take the appropriate amount of responsibility for their current situation." The next month, the DHHR submitted a court summary finding that petitioner had been compliant with the terms and conditions of his improvement period. Upon the recommendations made in the psychological evaluations and the DHHR's request, the circuit court ordered that the parents submit to a parental fitness evaluation by a review hearing scheduled in September of 2018. Petitioner submitted to that evaluation the same month, which revealed a history of substance abuse and incest with his father and stepfather as well as allegations that he raped his younger siblings. During his evaluation, petitioner stated that he did not need therapy because of his devotion to his church. The evaluation included reports that the child exhibited signs of sexual abuse including "crying, distress, and covering [himself] during diaper changes" and that the child was developmentally delayed. During the evaluation petitioner expressed no remorse for his actions, claiming that nothing was "done" to the child, and the evaluator concluded that petitioner's "lack of a moral compass (as evidenced in the notebook, sexually deviant behaviors, and assessment results) increase[d] the risk of abuse to [W.D.]." Finally, the evaluator recommended that petitioner's visitations with the child "cease immediately" and that his parental rights be

_____

it had jurisdiction to proceed under the Uniform Child Custody Jurisdiction and Enforcement Act. Petitioner does not challenge this ruling on appeal.

[3]Petitioner was ultimately convicted of one count of child endangerment and served forty-six days of incarceration before being released on probation during the course of the underlying proceedings.

terminated in light of the "information obtained and results of various assessments [that] the risk of abuse is too significant to warrant reunification."

In November of 2018, the DHHR submitted a court summary stating that petitioner had failed to sign a release "to let the worker see that he is attending therapy," remained "living in the same situation and residence" with the mother, failed to interact with the child during visits, was unemployed, and was "mean and controlling" during individualized parenting sessions. The summary concluded that because petitioner had not accepted responsibility for his actions and denied that the child was developmentally delayed at the time of his removal, it was "unclear what services [could] help him." That same month, the DHHR filed a motion to terminate petitioner's improvement period citing the portions of his parental fitness evaluation where he defended his actions as "therapeutic and part of his first amendment rights." Upon the DHHR's motion to terminate petitioner's improvement period, the circuit court held a hearing in April of 2019 and heard the testimony of the psychologist who authored petitioner's parental fitness evaluation. Thereafter, petitioner filed a motion to have a parental fitness evaluation performed by an "alternate psychological evaluator." At a hearing held in October of 2019, the circuit court denied the motion, finding that there was no evidence that petitioner's parental fitness evaluation was "improper" and set the case for disposition.

In November of 2019, the guardian filed a report recommending the termination of petitioner's parental rights. Final dispositional hearings were held in November and December of 2019. The parents requested post-dispositional improvement periods. The DHHR moved to terminate the parents' parental rights and presented evidence that the parents had failed to complete the terms and conditions of their post-adjudicatory improvement periods. Specifically, the DHHR argued that although petitioner agreed to participate in counseling to address the allegations of sexual abuse, he failed to sign the required release of records regarding these sessions, leaving the circuit court and the DHHR blind to his progress. Petitioner testified that he attended individualized therapy sessions to address his attention deficit hyperactivity disorder ("ADHD"), anxiety, and depression, but acknowledged that he never received treatment for the sexual abuse allegations. He also testified that he learned that his actions were wrong through his participation in church in August of 2017; however, the record reflects that petitioner defended those same actions in his parental fitness evaluation in September of 2018—nearly a year later. Further, a DHHR provider testified that when petitioner attended individualized parenting sessions regarding sexual abuse, he became very defensive and unreceptive. The provider testified in the following exchange:

> [The DHHR]: How did [the parents] react when you would go over that [sexual abuse] material with them?
>
> [Witness]: [T]hey would want to defend or deflect the allegation, the notebook in and of itself, the writing they said was just writings. They didn't really demonstrate any responsibility or awareness of the negative impact that they would have had on a child.
>
> . . . .

> [The DHHR]: Did they acknowledge or believe that [W.D.] had deficits when he—prior to being taken into the [DHHR's] care?
>
> [Witness]: No. They believed that he had abilities that somehow disappeared during the time that he was placed.

At the conclusion of the December of 2019, dispositional hearing, the circuit court held the matter in abeyance. Ultimately, the circuit court denied the parents' motions for post-dispositional improvement periods, finding that they could not show a substantial change in circumstances. Further, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by order entered on January 7, 2020. It is from this dispositional order that he now appeals.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying his motion for another parental fitness evaluation to be performed prior to the final dispositional hearing. According to petitioner, his parental fitness evaluation was completed fifteen months prior to the dispositional hearing and a subsequent evaluation "would have provided the [circuit court] with a more complete picture of how the [p]etitioner had addressed and/or corrected the issues that were of concern in the original [parental fitness evaluation]." We disagree.

---

[4]The mother's parental rights were also terminated below. According to the DHHR, the permanency plan for the child is adoption by his foster family.

West Virginia Code § 49-4-603(a)(1) provides as follows:

> At any time during proceedings under this article the court may, upon its own motion or upon motion of the child or other parties, order the child or other parties to be examined by a physician, psychologist or psychiatrist, and may require testimony from the expert, subject to cross-examination and the rules of evidence.

Here, it is undisputed that the DHHR complied with our holding in *In re: Chevie V.*, 226 W. Va. 363, 700 S.E.2d 815 (2010), that it must pay for and provide professional services, including parental fitness evaluations, for respondent parents such as petitioner herein. "Our holding in *Chevie V.* does not, however, stand for the proposition that petitioner may request multiple parental fitness evaluations merely because [he] may be unsatisfied with the outcome of the first parental evaluation." *In re J.B.*, No. 19-0581, 2020 WL 1674018, at *3-*4 (W. Va. Apr. 6, 2020)(memorandum decision). On appeal, petitioner presents no evidence that his parental fitness evaluation failed to provide the circuit court with accurate information regarding his ability to parent or whether he addressed his desires to commit sexual abuse of the child. Petitioner assumes that the passage of time alone is enough to require the circuit court to order a second parental fitness evaluation and fails to argue exactly how a second evaluation would have benefited the circuit court. As petitioner fails to support his claim that a second evaluation was warranted, we find no error in the circuit court's denial of his motion for a second parental fitness evaluation.

Petitioner next argues that the circuit court erred in denying him a post-dispositional improvement period. According to petitioner, the circuit court gave improper weight to the results of his parental fitness evaluation, which did not account for his progress in parenting classes and individualized therapy sessions. Further, petitioner points to his testimony concerning his dedication to his church and argues that his change of heart or attitude coupled with his compliance with his improvement period terms shows sufficient progress to warrant the granting of another improvement period. According to petitioner, through his testimony, he established that there had been a substantial change in circumstances warranting the granting of a post-dispositional improvement period. Upon our review, we find that petitioner is entitled to no relief.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Lastly, West Virginia Code § 49-4-610(3)(D) provides that a circuit court may grant a parent a post-dispositional improvement period when

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial

5

improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for a post-dispositional improvement period. Because petitioner was already granted a post-adjudicatory improvement period during the proceedings, he was required to demonstrate (1) a substantial change in circumstances and (2) that he was likely to fully participate in an improvement period. On appeal, petitioner fails to establish what substantial change of circumstances he experienced. Moreover, the overwhelming evidence set forth below demonstrates that petitioner was unlikely to fully participate in a post-dispositional improvement period given his failure to complete the most crucial term of his post-adjudicatory improvement period—individualized therapy and parenting sessions to address his desires to sexually abuse his son. As the circuit court noted, petitioner failed to provide confirmation from his therapy provider to corroborate his testimony that he attended individualized therapy for over a year. Also, when the parenting provider attempted to implement the sexual abuse curriculum, petitioner refused to participate. At the final dispositional hearing, petitioner's only alleged change in circumstances was that he had "changed internally" as a result of his participation in his church. The circuit court explained that it could not "determine whether this internal change ha[d] occurred, but [could] only look at the past and present conduct and behaviors of the respondent parents." The circuit court further noted that petitioner's parental fitness evaluation in which he defended his actions as therapeutic and protected First Amendment speech occurred in September of 2018, well after he allegedly underwent this change in 2017. We have previously held that failure to acknowledge the issues of abuse and neglect render an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Further, the circuit court found that petitioner's testimony lacked credibility. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Based on petitioner's failure to comply with the most important terms of his post-adjudicatory improvement period and his failure to genuinely acknowledge the severity of his actions, we find no error in the circuit court's denial of his motion for a post-dispositional improvement period.

Petitioner's final assignment of error alleges that the circuit court erred in terminating his parental rights "as there was insufficient evidence to show [that petitioner] could not substantially correct the conditions which gave rise to the filing of the abuse and neglect petition." Additionally, petitioner claims that the circuit court failed to consider less-restrictive alternative dispositions. We find no merit in petitioner's argument.[5]

---

[5]Within this assignment of error, petitioner inserts a single sentence alleging that the circuit court's denial of his request for post-termination visitation was not in the child's best interest. However, petitioner failed to cite to a single case or the appendix record in support of

(continued . . . )

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As shown above, the evidence established that petitioner failed to meaningfully participate in and complete court-ordered sexual abuse counseling and therapy. Further, petitioner's failure to sign the required release of records for the therapy sessions resulted in the DHHR's inability to confirm that petitioner participated in therapy as directed and constituted a lack of compliance with the terms and

_____

this assertion. These failures are in direct contradiction of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requiring that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to this assertion is woefully inadequate and entirely fails to comply with Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address this issue on appeal.

conditions of his improvement period. According to petitioner's own testimony, he attended therapy to address his ADHD, anxiety, and depression, but he also admitted that he had not received treatment to address sexual abuse. Therefore, the evidence demonstrates that petitioner failed to respond to or follow through with rehabilitative services designed to reduce or prevent the abuse and neglect of the child. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was necessary for the child's welfare.

While petitioner claims he should have been granted a less-restrictive dispositional alternative other that the termination of his parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, the circuit court's findings are fully supported by the record below, and we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 7, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison